DECISION
{¶ 1} Relator, Plastic Supplies, Inc., requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding temporary total disability ("TTD") compensation to respondent, Bounthack Khamphasy, and to enter an order denying said compensation on grounds that respondent voluntarily abandoned his employment with relator.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} As there have been no objections filed to the magistrate's decision, and it contains no error of law or other defect on its face, based upon an independent review of the evidence, this court adopts the magistrate's decision. Relator's request for a writ of mandamus is denied.
Writ denied.
Klatt, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Plastic Supplies, Inc., :
Relator, :
v. : No. 05AP-1273
Industrial Commission of Ohio : (REGULAR CALENDAR) and Bounthack Khamphasy, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on July 12, 2006 Crosby, O'Brien Associates Co., L.P.A., and Rebecca A.Kopp and Elizabeth A. Crosby, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Agee, Clymer, Mitchell Laret, Eric B. Cameron and C. RussellCanestraro, for respondent Bounthack Khamphasy.
 IN MANDAMUS {¶ 4} In this original action, relator, Plastic Supplies Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Bounthack Khamphasy, and to enter an order denying said compensation on grounds that respondent voluntarily abandoned his employment with relator.
Findings of Fact:
 {¶ 5} 1. On May 9, 2003, Bounthack Khamphasy ("claimant") sustained an industrial injury while employed as a laborer with relator, a state fund employer. The industrial claim is allowed for "open wound of right second finger" and is assigned claim No. 03-355995.
 {¶ 6} 2. On May 11, 2003, pursuant to relator's written policy, claimant presented at Mount Carmel East Urgent Care ("urgent care") for purposes of providing a urine specimen to be laboratory tested for cocaine, opiates, amphetamines, cannabinoids and PCP.
 {¶ 7} 3. On May 11, 2003, urgent care used a multi-part form to be completed by the specimen donor, the collector, and the medical review officer.
 {¶ 8} On May 11, 2003, the claimant as donor, signed the form thus certifying that he had provided an unadulterated urine specimen.
 {¶ 9} The collector was urgent care "clinical care coordinator" Lola Miller. On May 11, 2003, Lola Miller certified that she collected a urine specimen from claimant and that the specimen temperature was within range as read within four minutes of collection.
 {¶ 10} The medical review officer, Alex Fernandez, M.D., completed his portion on May 21, 2003. Dr. Fernandez indicated that the laboratory test was not performed on the specimen. Dr. Fernandez remarked "Specimen Substituted (Not Compatible With Urine)."
 {¶ 11} 4. By letter dated June 4, 2003, relator's personnel/benefits coordinator, Chelsi Thomas, informed claimant as follows:
This letter is in regards to the results of your post accident drug screen. According to the physician's report, the specimen was "substituted" and not compatible with urine. According to Plastic Suppliers Drug and Alcohol Policy, "An employee's refusal to submit to an ordered drug or alcohol test or attempt to alter or substitute the specimen provided for testing is considered a voluntary resignation."
In accordance with the above stated policy, Plastic Suppliers accepts your voluntary resignation effective June 4, 2003.
 {¶ 12} 5. On a C-84 dated June 6, 2003, treating physician, Walter L. Bernacki, M.D., certified TTD beginning May 9, 2003.
 {¶ 13} 6. Following a September 10, 2003 hearing, a district hearing officer ("DHO") issued an order stating:
* * * [T]he injured worker is granted temporary total disability compensation from 05/10/2003 to 06/03/2003, closed period. Compensation is based on the emergency room report as well as the office notes from the physician of record.
Temporary total disability compensation beginning 06/04/2003 and continuing is denied based on the finding that the injured worker voluntarily abandoned his employment. According to employer's handbook policies, an employee can be terminated for refusing to submit to a drug or alcohol test or who attempts to alter or substitute the specimen provided for testing. According to the injured worker's drug test results from a specimen collected 05/11/2003, the specimen was substituted and was not compatible with urine. The employer also submitted the copy of the Employee Acknowledgment of the receipt of the handbook signed by the injured worker on 01/03/2002. The District Hearing Officer also relies on the termination letter sent to the injured worker noting he was terminated as of 06/04/2003. This letter was written in both English and the injured worker's native language. The employer also testified that the handbook was provided to the injured worker in his native language.
Accordingly, based on the above, voluntary abandonment is found. * * *
 {¶ 14} 7. Claimant administratively appealed the DHO's order of September 10, 2003.
 {¶ 15} 8. On November 12, 2003, in a letter addressed to claimant's counsel, urgent care clinical manager, Sallie Zimmerman, RN, CEN, wrote:
* * * In reference to the actual collection, please see the attached Urine Drug Screening Process. I can assure you that Ms. Miller followed the entire protocol to the letter. As you can see, any deviation from this procedure or problems with the sample would be noted on the form, as stated in #9. If the specimen appears to be tampered with, the staff is instructed to immediately stop the process and either a) notify the employer for further instruction or b) repeat the procedure from step #1.
The record reflects that this was a normal collection with the appropriate temperature recorded. The specimen was handled only by the donor and collector. It was sent to the lab via courier and a chain of custody completed. * * *
In the same letter aforementioned, Lola Miller wrote:
I Lola Miller, collected the specimen from Bounthack Khamphasy on May 11, 2003. The procedure was done according to the written standards attached to this letter. There was no obvious problem or signs of tampering with the specimen.
 {¶ 16} 9. Following a December 8, 2003 hearing, a staff hearing officer ("SHO") issued an order that modified the DHO's order of September 10, 2003. The SHO's order states:
* * * The Staff Hearing Officer awards temporary total compensation from 05/10/2003 through 06/15/2003, based on Dr. Bernacki's C-84 dated 06/06/2003 certifying claim-related disability over this period, along with the 05/10/2003 emergency room report from Mount Carmel East.
Compensation for the period from 06/16/2003 through 06/26/2003 is payable upon submission of appropriate medical evidence (C-84) demonstrating claim-related disability over this period. Per Dr. Bernacki's disability slip dated 07/28/2003, the claimant was released without restrictions on 06/27/2003.
The Staff Hearing Officer vacates the finding that the claimant voluntarily abandoned his former position of employment pursuant to the employer's written drug test policy. The policy in question indicates that "an employee's refusal to submit to an ordered drug or alcohol test or attempt to alter or substitute the specimen provided for testing is considered a voluntary resignation." In this case, the claimant provided a urine sample on 05/11/2003, the results of which came back 05/21/2003 as "specimen substituted/not compatible with urine." The Staff Hearing Officer finds no evidence to support a finding that the claimant substituted or attempted to substitute the urine sample he provided. This finding is based on the claimant's denial at hearing that he had done so, as well as on the 11/12/2003 letter from Ms. Zimmerman and Ms. Miller of Mount Carmel East Urgent Care, the facility at which the claimant's urine sample was collected and from which it was sent for analysis. The 11/12/2003 letter indicates that the specimen was collected pursuant to an established protocol, that the temperature of the specimen was at the level appropriate for such sample, and that there was no obvious problem or signs of tampering with the sample which the claimant provided. Based on these findings, the Staff Hearing Officer finds insufficient evidence demonstrating that the claimant violated a written employer policy such as to rise to the level of a voluntary abandonment barring the payment of temporary total compensation effective 06/04/2003. * * *
 {¶ 17} 10. On January 8, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of December 8, 2003.
 {¶ 18} 11. On November 29, 2005, relator, Plastic Supplies, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} A voluntary abandonment of the former position of employment can support denial of TTD compensation. State ex rel.McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305.
 {¶ 21} Firing can constitute a voluntary abandonment of the former position of employment. State ex rel. Louisiana-PacificCorp. v. Indus. Comm. (1995), 72 Ohio St.3d 401. InLouisiana-Pacific, the court states:
* * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts. * * *
 {¶ 22} Here, relator contends that the commission, through its SHO, exceeded its authority when it made its own determination as to whether the evidence supported relator's determination that its employee had violated the work rule at issue. Relator contends that in so doing the commission "exceeded its jurisdiction."
 {¶ 23} Relator's contention seems to suggest that the commission must give some deference to the employer's fact finding regarding the incident that became the basis for the discharge. Relator's suggestion is incorrect.
 {¶ 24} Preliminarily, it should be noted here that the commission had before it evidence that relator apparently did not have at the time that relator decided to fire the claimant. For example, the November 12, 2003 letter from Sallie Zimmerman and Lola Miller was generated long after claimant was fired. Also, as the SHO's order indicates, claimant himself testified at the December 8, 2003 hearing. Obviously, claimant's testimony was not available to relator at the time relator fired the claimant. Moreover, there is no evidence in the record showing that relator ever communicated with the claimant about the incident prior to making its decision to fire.
 {¶ 25} In short, the commission considered evidence relating to claimant's alleged violation of a work rule that relator did not consider or have available to it when it earlier determined to fire its employee. Moreover, there is no evidence of record indicating that relator ever objected to the admission of any evidence submitted to the commission that had not been considered at the time of the firing.
 {¶ 26} It is well settled law that issues not raised administratively can not be raised in a mandamus action. Stateex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78. Thus, relator's failure to object administratively to the admission of evidence that had not been available to relator at the time it decided to fire the claimant precludes relator from raising the issue it attempts to raise here.
 {¶ 27} Moreover, relator's argument seems to be answered byState ex rel. Nick Strimbu Inc. v. Indus. Comm.,106 Ohio St.3d 173, 2005-Ohio-4386. In that case, the employer fired its employee after an industrial injury on grounds that the employee had falsified an employment application. The commission determined the employee did not have the requisite intent to deceive and thus did not falsify his employment application. TheStrimbu court at ¶ 9 — 10 states:
* * * In the case at bar, the commission found, after being unconvinced that Marshall had violated a written work rule or policy, that Marshall's discharge did not constitute a voluntary abandonment. At issue is a clause in Marshall's employment application that states that by its signing, Marshall understood that "false or misleading information given in [his] application or interview(s) may result in discharge." Marshall's application omitted reference to prior employment with PII Motor Express. The litigants' arguments reveal a consensus that an omission — in order to constitute falsification — must be deliberate and motivated by an intent to deceive. Strimbu claimed, at the hearing, that the omission was deliberate and amounted to falsification. Marshall stated that it was inadvertent and that he simply forgot PII while attempting to recount all of his employers over the past decade.
The commission was persuaded by Marshall's testimony, and we — like the court of appeals — defer to that determination. The commission is exclusively responsible for determining evidentiary weight and credibility. State ex rel. Moss v. Indus. Comm.
(1996), 75 Ohio St.3d 414, 417, 662 N.E.2d 364. Because this determination was within the commission's prerogative and was supported by evidence, we decline to find that it was an abuse of discretion. * * *
 {¶ 28} As in Strimbu, the commission is exclusively responsible for determining evidentiary weight and credibility. Because the commission's determination of an involuntary abandonment was within the commission's prerogative and was supported by evidence, relator's request for a writ of mandamus must be denied.
 {¶ 29} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.